1  CHRISTOPHER A. LILLY (SBN 192479)
   ARVIN TSENG (SBN 245648)
2  TROYGOULD PC
   1801 Century Park East, 16th Floor
3  Los Angeles, California 90067-2367

4  Telephone: (310) 553-4441
   Facsimile: (310) 201-4746
5  E-mail:    clilly@troygould.com

6  Attorneys for Defendant
   Cure Technologies, Inc.
7

8
                    UNITED STATES DISTRICT COURT
9
                   CENTRAL DISTRICT OF CALIFORNIA
10

11 MERCHANT MAX, INC.,              ) Case No. 2:10-CV-07042-DDP-E
                                    )
12            Plaintiff,            ) Assigned for all purposes to:
                                    ) Hon. Dean D. Pregerson
13    vs.                           )
                                    ) CURE TECHNOLOGIES, INC.'S
14 CURE TECHNOLOGIES, INC.,         ) MOTION TO DISMISS THE
                                    ) COMPLAINT PURSUANT TO
15            Defendant.            ) FORUM NON CONVENIENS
                                    )
16                                    Date:     December 13, 2010
                                      Time:     10:00 a.m.
17                                    Courtroom: 3, 2nd floor

**TroyGould PC**

03022/0001 209596.1

MOTION TO DISMISS PURSUANT TO FORUM NON CONVENIENS

**TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE, HEREBY GIVEN that on December 13, 2010, at 10:00 a.m., or at such other time as the Court may hear the matter, before the Honorable Dean D. Pregerson in the above-captioned Court, located at 312 North Spring Street, Los Angeles, California, 90012, or such other time or place as the Court may determine, Cure Technologies, Inc. ("Cure") will, and hereby does, move the Court for an order pursuant to the common law doctrine of forum non conveniens dismissing plaintiff Merchant Max, Inc.'s Complaint.

The motion will be based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the declarations of Colin Sholes and Gib van Ert, the other pleadings on file herein, and on such evidence and oral argument as may be presented at the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which began on October 28, 2010, and concluded on November 5, 2010.

Dated:  November 8, 2010                               TROYGOULD PC


By: /s/ Arvin Tseng
         Arvin Tseng
         Attorneys for Cure Technologies, Inc.

# **TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND .................................................................................................. 2
    A. Merchant Max's Beginnings ..................................................................... 2
    B. Joint Services Agreement With Cure ....................................................... 3
    C. Performance Under the Agreement, Breach, and Commencement of Litigation ..................................................... 4
    D. Substance of the Complaints ..................................................................... 5
    E. Location of Evidence ................................................................................. 5

III. THE COURT SHOULD DISMISS THIS CASE ON THE GROUNDS OF FORUM NON CONVENIENS ............................................. 5
    A. Canada Satisfies the Adequate Alternative Forum Standard ................................................................................................ 6
    B. The Balance of Private and Public Interest Factors Favor Dismissal .................................................................................................. 7
        1. The Majority of Private Factors Favor a Dismissal ................... 7
            (a) Location of Witnesses and Evidence .............................. 8
            (b) Compelling the testimony of witnesses ........................... 9
            (c) Enforceability of the judgment ........................................ 9
            (d) Only other factor is neutral ............................................. 10
        2. The Majority of Public Factors Warrants Dismissal ................ 10
            (a) Factors 1, 3, 4, and 5 favor a dismissal ......................... 11
            (b) Factor 2 is neutral ........................................................... 11
        3. Merchant Max's Choice of Forum Not Entitled to Deference ................................................................................... 11

IV. CHOICE OF LAW CONSIDERATIONS ARE INAPPLICABLE .................................................................................................. 12

V. CONCLUSION ................................................................................................... 13

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

Cheng v. Boeing Co.,
    708 F.2d 1406 (9th Cir. 1983) ........................................................................ 2

Contact Lumber Co. v. P.T. Moges Shipping Co.,
    918 F.2d 1446 (9th Cir. 1990) ...................................................................... 12

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501, 91 L. Ed. 1055, 67 S. Ct. 839 (1947) ................................ 5, 10

Lueck v. Sundstrand Corp.,
    236 F.3d 1137 (9th Cir. 2001) ................................................. 5, 6, 7, 8, 10, 12

Mizokami Bros. of Ariz., Inc. v. Baychem Corp.,
    556 F.2d 975 (9th Cir.1977) ......................................................................... 12

Piper Aircraft Co. v. Reyno,
    454 U.S. 235, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981) ............. 2, 6, 7, 10, 12

Tuazon v. R.J. Reynolds Tobacco Co.,
    433 F.3d 1163 (9th Cir. 2006) ........................................................................ 6

Pursuant to the doctrine of forum non conveniens, Cure Technologies, Inc. ("Cure") moves to dismiss the complaint filed by Merchant Max, Inc. ("Merchant Max") as follows.

## I.

## **INTRODUCTION**

This lawsuit represents Merchant Max's race to the courthouse in an attempt to force Cure—a Canadian company—to litigate its claims against Merchant Max in California, rather than in Canada.

Merchant Max and Cure entered a Joint Services Agreement (the "Agreement"), whereby Cure agreed to provide Merchant Max with gateway software that Merchant Max could sell to its clients, for use in processing credit card payments. Under that Agreement, Merchant Max owes Cure over $500,000. Merchant Max has refused to pay. Cure therefore filed its collection action against Merchant Max, in Canada, on October 4, 2010.

Anticipating that Cure was ready to file suit against Merchant Max in Canada—where Merchant Max had already consented to jurisdiction—Merchant Max hurriedly filed a preemptive lawsuit against Cure in Los Angeles on September 21, 2010. Merchant Max alleges that Cure provided defective software under the Agreement. Merchant Max apparently hopes that the oppression and vexation of forcing Cure to travel to Los Angeles to litigate its case will deter Cure from enforcing its rights to full payment.

The Court should not reward Merchant Max's tactics. Except for the fact that Merchant Max is a California company, this lawsuit has almost no connection to California. On the other hand, there is a significantly stronger connection to Canada, such that the balance of conveniences favors adjudication in Canada, and dismissal of the case in Los Angeles. The documents and witnesses relating to both parties' allegations are almost exclusively in Canada—indeed, all of the transactions using the software that is the subject of the Agreement were routed

through Canada.  Documents such as log files regarding those transactions—relevant to Merchant Max's allegations of slowness or misprocessing—are located in Canada.  The people who designed and maintained the software of which Merchant Max complains are located in Canada.  Merchant Max is even a 15% owner of the Canadian company that owns Cure.

Moreover, Cure served its Canadian lawsuit on Merchant Max first.  Specifically, Merchant Max was served with the Canadian lawsuit on October 6, 2010; Cure was not served with the California lawsuit until October 8, 2010.

When a defendant makes a "clear showing of facts which . . . establish such oppression and vexation of a defendant as to be out of proportion to the plaintiff's convenience, which may be shown to be slight or nonexistent," the court should dismiss the case pursuant to the doctrine of forum non conveniens.  <u>Cheng v. Boeing Co.</u>, 708 F.2d 1406, 1410 (9th Cir. 1983).  "A citizen's forum choice should not be given dispositive weight . . . .  As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper."  <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 256, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981).

As set forth below, the balance of conveniences establish that trial in California would be unnecessarily burdensome for Cure, and favors dismissal of Merchant Max's lawsuit in this forum, so that the parties may resolve all their differences in Canada, where this litigation belongs.  Cure respectfully requests that this Court grant its motion.

## II.
## BACKGROUND

### A.   Merchant Max's Beginnings

Merchant Max started out as a "merchant processor broker".  (Declaration of Colin Sholes ("Sholes Decl"), ¶ 4.)  When website operators want to take credit card payments on their websites, rather than create the infrastructure to do this

1  themselves, they usually seek a "merchant processor" who provides that service.
2  (Id.)  One way to find such a merchant processor is to use a merchant processor
3  broker.  (Id.)  Typically, a merchant processor broker connects a website operator
4  with a merchant processor, and gets a commission for his efforts.  (Id.)
5       However, as in many cases with middlemen, once the website operator finds
6  a merchant processor that he likes, he often cuts the broker out of the deal and
7  contracts directly with the merchant processor to get lower rates.  (Id. at ¶ 5.)
8       Thus, Merchant Max sought to transform itself from a broker into a
9  merchant processor.  (Id.)

### B. Joint Services Agreement With Cure

11      When Merchant Max decided to become a merchant processor, it lacked the
12 requisite software and infrastructure.  (Id. at ¶ 6.)  However, Colin Sholes
13 ("Sholes"), who knew the owners of Merchant Max, had access to such software
14 through a separate company owned and operated by Sholes.  (Id.)  While the
15 software to which Sholes had access was not quite ready for commercial use, both
16 Merchant Max and Sholes believed that with some development, it could be used
17 commercially.  (Id.)  Merchant Max and Sholes thus decided to form Cure.  (Id. at
18 ¶ 7.)
19      Cure is a wholly owned subsidiary of BLK Holdings LTD ("BLK"), which
20 is itself a Canadian Company.  (Id.)  Cure is also a Canadian corporation.  (Id.)
21 Cure maintains an office in Vancouver, Canada, with a secondary office in
22 Toronto, Canada.  (Id.)  Cure has no offices or assets in California, or in the United
23 States.  (Id.)  Merchant Max is a 15% owner of BLK—again, the Canadian owner
24 of Cure.  (Id.)
25      Merchant Max and Sholes decided that the core business of Cure would be
26 to further develop and maintain Sholes's software into the Cure Gateway System.
27 (Id. at ¶ 8.)  The parties also agreed that Merchant Max would sell access to the
28 software as a merchant processor.  (Id.)

1  This agreement was memorialized into the Joint Services Agreement, which
2  the parties entered on or about December 15, 2008 (attached as Exhibit A to
3  Merchant Max's complaint).  (Id. at ¶ 9.)

4  The Agreement permitted Merchant Max to sell to its customers use of the
5  Cure Gateway System, which, at its core, provides website operators with the
6  ability to accept credit card payments.[1]  (Id. at ¶ 10.)  Merchant Max sold access to
7  the Cure Gateway System either directly or through a version branded with
8  Merchant Max's logo.  (Id. at ¶ 11.)  Merchant Max would pay Cure different
9  amounts, depending on which version it sold.  (Id.)

10  Importantly, regardless of the version that Merchant Max sold, the resultant
11  transactions from Merchant Max's sales were routed through Canada—that is,
12  through Cure's Canadian servers.  (Id.)

13  Additionally, Merchant Max housed its e-mail and web servers, used to
14  support its internal operations, in Canada under the management of Cure.  (Id. at ¶
15  12.)  In other words, were one to e-mail Merchant Max or visit its website, the
16  information would go to and come from a server physically located in Canada.[2]
17  (Id.)

## C. Performance Under the Agreement, Breach, and Commencement of Litigation

20  Merchant Max and Cure operated under the Agreement for a little over a
21  year without significant issue.  (Id. at ¶ 13.)  Merchant Max made monthly
22  payments to Cure pursuant to the Agreement.  (Id.)

23  In or around January 2010, these monthly payments stopped.  (Id. at ¶ 14.)
24  Merchant Max claimed to be having issues with its bank, and asked Cure for
25  patience in getting paid.  (Id.)

---

[1] The Cure Gateway System also has other features that customers can utilize, such as the ability to generate reports on charges, refunds, and other customer transactions.  (Sholes Decl, ¶ 10.)

[2] On or about October 18, 2010—i.e., post-litigation—representatives of Merchant Max came and picked up these servers.  (Sholes Decl, ¶ 12.)

1  Cure worked with Merchant Max on getting paid, to no avail.  (Id. at ¶ 15.)
2  After many months, Cure told Merchant Max that Cure needed to get paid—
3  otherwise, Cure would consider filing suit.  (See id. at ¶ 15.)
4  When Merchant Max still failed to pay the amounts due and owing under the
5  Agreement, Cure filed a lawsuit in British Columbia, Canada, on October 4, 2010.
6  (Id. at ¶ 16 & Exh. 1.)  Cure served its complaint on Merchant Max two days later,
7  on October 6, 2010.  (Declaration of Gib van Ert ("Van Ert Decl"), ¶ 7 & Exh. 1.)
8  Four days later, on October 8, 2010, Merchant Max served Cure with this
9  instant lawsuit.

**D.    Substance of the Complaints**

As set forth in Cure's Canadian complaint: (1) Merchant Max breached the Agreement by not paying Cure in excess of $500,000; and (2) Merchant Max negligently closed accounts, causing Cure additional damages.  (Sholes Decl, Exh. 1, ¶¶ 22–30.)

Merchant Max's California complaint consists generally of two allegations, that Cure: (1) allegedly provided a defective gateway system; and (2) purportedly entered into a contractual relationship with another company in violation of the Agreement.  (Complaint, ¶¶ 29 & 30.)  Cure denies these allegations.

**E.    Location of Evidence**

As set forth below, the location of the majority of witnesses and documentary evidence is in Canada.  (Sholes Decl, ¶ 18.)

### III.
### THE COURT SHOULD DISMISS THIS CASE ON THE GROUNDS OF FORUM NON CONVENIENS

"A district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142 (9th Cir. 2001) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 504, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)).  "In

dismissing an action on forum non conveniens grounds the court must examine: (1) whether an adequate alternative forum exists, and (2) whether the balance of private and public interest factors favors dismissal." Id. at 1142–43 (citations omitted).

Here, the Court should dismiss Merchant Max's case in this district, because: (a) Canada satisfies the threshold standard that there is an adequate alternative forum; and (b) the balance of private and public factors favors a dismissal.

### A. Canada Satisfies the Adequate Alternative Forum Standard

"The first requirement for a forum non conveniens dismissal is that an adequate alternative forum is available to the plaintiff. The Supreme Court has held that an alternative forum ordinarily exists when the defendant is <u>amenable</u> to service of process in the foreign forum." Lueck, 236 F.3d at 1143 (citing Piper Aircraft Co., 454 U.S. at 254 n. 22) (emphasis added).

Additionally, "a foreign forum will be deemed adequate unless it offers <u>no</u> practical remedy for the plaintiff's complained of wrong." Id. at 1144; see also Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1177 (9th Cir. 2006) ("This test is easy to pass; typically, a forum will be inadequate only where the remedy provided is 'so clearly inadequate or unsatisfactory, that it is no remedy at all.'") (citation omitted) (emphasis added).

In sum, the case law shows two requirements: (1) that the defendant is amenable to service; and (2) the forum provides a remedy. Here, the Canadian court system is an alternative forum. Cure is a corporation located in and organized under the laws of British Columbia, Canada—consequently, it is amenable to service of process in Canada.

Further, Merchant Max's complaint against Cure consists of a single claim: breach of a written contract. And Canadian law has a remedy for breach of

contract. (Van Ert Decl, ¶ 5(a).)[3]  Indeed, the Canadian remedy for breach of contract is substantially the same as in the U.S.

Additionally, Merchant Max is permitted to assert its claim against Cure in the already pending lawsuit. (Id. at ¶ 5(b).)  That is, Merchant Max has the option of filing its claims as a cross-complaint in the pending Canadian lawsuit.

The first prong of the forum non conveniens test is met.

### B.    The Balance of Private and Public Interest Factors Favor Dismissal

In determining whether to dismiss for forum non conveniens, courts must consider seven private interest factors and five public interest factors. Lueck, 236 F.3d at 1145, 1147.

Canada is not only an adequate alternative forum, it is a better alternative forum because: (1) the majority of private factors favors a dismissal; (2) the majority of public factors favors a dismissal; and (3) due to Merchant Max's ties to Canada and its decisions to enter an agreement with a Canadian company, its choice of California forum is entitled to very little deference, if any.  The Court should dismiss Merchant Max's lawsuit pursuant to the doctrine of forum non conveniens.

#### 1.    The Majority of Private Factors Favor a Dismissal

"Courts consider the following private interest factors: (1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) 'all other practical problems that make

---

[3] Indeed, even if Canadian law were different from U.S. law on breach of contract—and it is not—the difference is legally irrelevant because the favorability or lack thereof of the substantive law of the foreign forum does not come into play "unless the remedy provided is so clearly inadequate or unsatisfactory that it is no remedy at all." Piper Aircraft Co., 454 U.S. at 254.  And here the remedy for breach of contract in Canada is not only adequate, but substantially the same as the U.S.

trial of a case easy, expeditious and inexpensive.'" Lueck, 236 F.3d at 1145 (citing Gulf Oil, 330 U.S at 508).

Here, the majority of the factors favor a Canadian forum.

### (a)  Location of Witnesses and Evidence

Factors 1 (the residence of parties and witnesses), 3 (access to physical evidence and other proof), and 5 (cost of bringing witnesses to trial) all relate to the location of witnesses and the location of physical evidence and other sources of proof. As illustrated below, the great majority of witnesses and evidence needed to prove Merchant Max's own claims are in Canada:

- Merchant Max claims that the Cure Gateway System contained defects (Complaint, ¶¶ 1, 20, & 20(g)). The witness who designed the Cure Gateway System—Jeff Doss—is located in Canada. Documents related to the design of the Cure Gateway System, as well as its testing and upgrades are in Canada. (Sholes Decl, ¶ 18(a).)
- Merchant Max claims that Cure repeatedly tested upgrades in a live environment without notice (Complaint, ¶ 20(d)). The witnesses who can testify regarding these upgrades—Jeff Doss, Carl Vernon, Ruan Müller, Adam Barrett, Loong Chan, and Jason Warren—as well as the documents related to these upgrades, are in Canada. (Sholes Decl, ¶ 18(b).)
- Merchant Max claims that the Cure Gateway System had frequent outages (Complaint, ¶ 20(g)). The witnesses who can testify regarding the system's uptime—Jeff Doss, Carl Vernon, Ruan Müller, Adam Barrett, Loong Chan, and Jason Warren—as well as the documents related to the system's uptime, are in Canada. (Sholes Decl, ¶ 18(c).)
- Merchant Max claims that there were problems in customer requests being backlogged, or not being processed, or being processed improperly (Complaint, ¶¶ 20(b)–(c), 20(e)–(f), 20(i), & 20(m)). The servers on which the requests of Merchant Max's customers were processed were

physically located in Canada. All requests were routed to and through Canada. Therefore, any logs regarding these requests would also be in Canada. (Sholes Decl, ¶ 18(d).)

- Merchant Max claims that Cure did not answer its phones or e-mails (Complaint, ¶ 21). Records of phone calls and e-mails received by Cure are in Canada. Moreover, the witnesses—i.e., the Cure employees—are all located in Canada. (Sholes Decl, ¶ 18(e).)

- Merchant Max claims that Cure entered into an agreement with a third-party merchant bank in violation of the Agreement (Complaint, ¶ 24). All records regarding Cure's purported relationship with merchant banks would be in Canada. Additionally, all witnesses regarding any such purported relationships would be in Canada. (Sholes Decl, ¶ 18(f).)

Additionally, witnesses like Cure's outside accountant—Stephen Lim of SitLim Chartered Accountants—are located in Canada. (Id. at ¶ 18(g).)

In sum, the overwhelming majority of documents and witnesses on Merchant Max's allegations are in Canada. Therefore, factors 1, 3, and 5 all favor granting Cure's motion.

### (b) Compelling the testimony of witnesses

Factor 4 (whether unwilling witnesses can be compelled to testify) favors dismissal as well. Like courts in the United States, the Canadian court system has a mechanism to compel the attendance of witnesses, including unwilling witnesses. (Van Ert Decl, ¶ 5(c).) Additionally, the Canadian court system has a mechanism to obtain documents in much the same way as here. (Van Ert Decl, ¶ 5(d).) Therefore, factor 4 favors granting the motion.

### (c) Enforceability of the judgment

Factor 6 (the enforceability of judgment) also favors dismissal—Cure has no California assets. In fact, Cure has no assets located in the United States. (Sholes Decl, ¶ 7.)

For purposes of this theoretical exercise, were Merchant Max to prevail on its claims, it would have no assets upon which to execute its judgment. Merchant Max would have to file a lawsuit in Canada to domesticate the U.S. judgment in Canada.

Therefore, not only does factor 6 favor granting the motion, factor 6 shows that it would be a particularly inappropriate use of judicial resources to permit this action to proceed in California.

### (d) The "Catch-All" Factor

Factor 7 (all other practical problems that make trial of a case easy, expeditious and inexpensive) also favors dismissal. A consolidated trial in Canada would be easier because the majority of documents and witnesses are in Canada. There is already a pending action where Merchant Max may file a cross-complaint, and Merchant Max would have to file a lawsuit in Canada anyway should it desire to enforce any judgment it might obtain.

Factor 7 favors granting the motion.

### (e) Only other factor is neutral

No factors favor California jurisdiction—at best, factor 2 (the forum's convenience to the litigants) is a wash. While California is undoubtedly more convenient for Merchant Max, Canada is equally more convenient for Cure.

Thus, out of the seven private factors that this Court should consider, only one factor is neutral—the remaining six all favor dismissal.

### 2. The Majority of Public Factors Warrants Dismissal

"Courts consider the following public interest factors: (1) local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." Lueck, 236 F.3d at 1147 (citing Piper Aircraft, 454 U.S. at 259–61; Gulf Oil, 330 U.S. at 508–09).

### (a) Factors 1, 3, 4, and 5 favor a dismissal

With the exception of Merchant Max's California citizenship, there is no local interest in this lawsuit. The great majority of witnesses and documents relevant to both Merchant Max's and Cure's claims are in Canada, not California. Indeed, Merchant Max has numerous ties to Canada, such as its 15% ownership of Cure's Canadian parent company, and locating its computer servers in Canada. In contrast, Cure has no ties to California.

Therefore, there is no reason to burden local courts and juries with this lawsuit. This is especially the case now, given the current shortage of judges in the Central District.[4] This district should not be required to pay for resolving a dispute that is primarily a Canadian dispute.

### (b) Factor 2 is neutral

The only factor that does not favor dismissal outright is the second factor, the court's familiarity with the governing law.

While this Court is obviously more than competent to adjudicate a breach of contract claim, so too is a Canadian court. There is no special expertise required by a breach of contract claim that warrants this Court's attention.

As such, the Canadian Court is more than capable of adjudicating Merchant Max's breach of contract claim.

### 3. Merchant Max's Choice of Forum Not Entitled to Deference

While normally a plaintiff's choice of forum may be entitled to some deference, "'[i]n an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to

---

[4] See Current Judicial Vacancies at http://www.uscourts.gov/JudgesAndJudgeships/JudicialVacancies/CurrentJudicialVacancies.aspx, showing two vacancies in the Central District due to the resignation of the Honorable Stephen G. Larson, and the death of the Honorable Florence-Marie Cooper.

the conclusion that the site of the litigation should be elsewhere.'" Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1450 (9th Cir. 1990) (quoting Mizokami Bros. of Ariz., Inc. v. Baychem Corp., 556 F.2d 975, 978 (9th Cir.1977)).

In any case, "[a] citizen's forum choice should not be given dispositive weight . . . . Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Piper Aircraft Co., 454 U.S. at 256.

Here, not only did Merchant Max decide to enter a contract with a Canadian corporation, Merchant Max is a 15% owner of that Canadian corporation's parent company. Additionally, Merchant Max chose to house its computer servers in Canada, and to direct its customers' web traffic to Canada.

Merchant Max's current choice of California court is entitled to very little deference.

## IV.

## CHOICE OF LAW CONSIDERATIONS ARE INAPPLICABLE

"[T]he choice of law analysis is only determinative [on a motion for forum non conveniens] when the case involves a United States statute requiring venue in the United States, such as the Jones Act or the Federal Employers' Liability Act." Lueck, 236 F.3d at 1148.

Merchant Max may argue that the choice of U.S. law in its claims weigh against granting the Motion. But the parties' choice of law—which in itself is a wash in any factor analysis—is irrelevant to this motion because the claims do not involve U.S. law requiring venue in the United States.

Moreover, here, the parties agreed that the Agreement would be governed by "the laws of the forum state or province as applied to contracts that are executed

and performed within that state or province." (Complaint, Exh. A (Agreement), § 11.10.)  In other words, in this instant lawsuit, California law would govern.  In Cure's Canadian lawsuit, Canadian law governs.

Choice of law considerations are therefore inapplicable.

## V.
## **CONCLUSION**

Merchant Max brings this lawsuit as a tactical attempt to ensnarl a California district court in a case that has very little, if anything, to do with California.  The majority of private and public factors that the Supreme Court has dictated should affect a decision to dismiss based on forum non conveniens, favors dismissal, so that Merchant Max can litigate its claims against Cure in Cure's already pending lawsuit in Canada.  Cure respectfully requests that the Court dismiss Merchant Max's lawsuit pursuant to the doctrine of forum non conveniens.

Dated:  November 8, 2010                           TROYGOULD PC


                                                   By:/s/ Arvin Tseng
                                                      Arvin Tseng
                                                   Attorneys for Cure Technologies, Inc.